## CLINT v FRANKLIN BARGAIN HOUSE, INC.

Common Pleas Court, Lucas Co

No 158248. Decided March 26, 1941

Edward Lamb, Toledo, for plaintiffs.

Denmar, Miller & Beatty, Ritter & Dougherty, Williams, Eversman & Morgan, McMahon, Weber & Hayward, and Emmanuel Zimmerman, Toledo, for various defendants.

## OPINION

By STAHL, J.

This is one of ten actions in which overtime compensation is sought to be recovered under the Fair Labor Standards Act of 1938.

The plaintiff alleges that in the period since the taking effect of that Act he has worked more hours per week than the maximum provided in the Act, and has not been paid as therein provided. He sets forth with ·sufficient particularity the amount received, and shows that he was engaged in interstate commerce. He alleges that other employes have worked overtime and and have not been fully paid, and he brings this action on behalf of himself and all other employees similarly situated.

Motions have been filed in each case. One of such motions is to strike from the petition the statement that the action is on behalf of all other employees similarly situated, and the other motion is that the plaintiff be required to set forth the names of the other employees on whose behalf the action is brought, and in some instances, to set forth all the facts relating to such employment.

There are other motions, but these motions are the ones that are the concern of this opinion, and the court does not underestimate the importance of the problem involved, and·has given intensive investigation and consideration to it.

The Fair Labor Standards Act of 1938 provides:

"Section 2, (a) The Congress hereby finds that the existence, in industries engaged in commerce or in the production of goods for commerce, of labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers causes commerce and the channels and instrumentalities of commerce to be used to spread and perpetuate such labor conditions among the workers of the several states." And further burdens commerce in the particulars named.

"Sec. 2, (b) It is hereby declared to be the policy of this Act, through the exercise by Congress of its power to regulate commerce among the several states, to correct and as rapidly as practicable to eliminate the conditions above referred to in such industry."

In order to accomplish this declared purpose of Congress Section 7 (a) provides: "No employer shall, except as otherwise provided in this section, employ (Section 3 (g) 'Employ includes to suffer or permit to work') any of his employees who is engaged in commerce or in the production of goods for commerce,—(1)—for a workweek longer than forty-four hours during the first

year from the effective date of this section, (2) for a workweek longer than forty-two hours during the second year from such date, or (3) for a workweek longer than forty hours after the expiration of the second year from such date, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

And Section 6 (a) provides, "Every employer shall pay to each of his employees who is engaged in commerce or in the production of goods for commerce wages at the following rates:

(1) During the first year from the effective date of this section, not less than twenty-five cents an hour.

(2) During the next six years from such date, not less than thirty cents an hour.

(3) After the expiration of seven years from such date, not less than forty cents an hour."

These are the fundamental provisions of this Act, but it provides for the appointment of an administrator with very limited power, and for a method of increasing the wage above thirty cents but below forty cents in different industries before the expiration of seven years, and for reducing it below forty cents but not below thirty cents after seven years, and it exempts certain industries and certain employees from the operation of the Act.

Although the Act itself took effect immediately upon being approved by the president, Sections 6 and 7 did not become effective for 120 days thereafter, the clear intention being that employers should have the benefit of that time to become acquainted with the provisions of the Act and to adjust themselves to its requirements.

Section 11 (c) provides: "Every employer subject to any provisions of this Act or of any order issued under this Act shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this Act, or the regulations or orders thereunder."

On October 21, 1938, the administrator issued specific and detailed regulations for the keeping of records of employees.

Sections 16 (a) provides: "Any person who wilfully violates any of the provisions of Section 15 shall," (Section 15 includes Sections 6, 7 and 11c) "upon conviction thereof, be subject to a fine of not more than $10,000, or to imprisonment of not more than six months, or both."

On February 3, 1941, the Supreme Court of the United States in the case of the United States of America v F. W. Darby Lumber Company et., decided that this Act is constitutional and that failure to pay as provided by Section 6 or Section 7, or failure to keep the record provided for by Section 11 (c) constitutes a crime for which the delinquent may be punished.

In addition to these duties which the Act imposes upon the employer, it grants certain rights to the employee. Section 16 (b) provides: "Any employer who violates the provisions of Section 6 or Section 7 of this Act shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. or such employee or employees may des-

ignate an agent or representative to maintain such action for and in behalf of all employees similarly situated."

It is under these provisions that the problem in those cases arises. Of course an employee may bring the case in the United States courts, and there can be no question as to the right of an employee to maintain an action in this court for what he claims is due to him individually. But may he bring such action in this court on behalf of other employees, and particularly may he maintain such action without naming such other employees?

I find nothing either in the Act nor in the law of Ohio that makes the problem easier if the plaintiff were to name those on whose behalf he acts, and no authority for permitting other employees to intervene, and so confine recovery to those joining in the action.

Plaintiff contends that because the Constitution of the United States and the laws made under its authority are the supreme law of the land, and that the judges of every state shall be bound thereby, this act invests the court with the power to sustain such an action no matter how limited the jurisdiction of the court be by the Constitution or the laws of the state. The court does not agree with that position.

It is difficult to think of an activity of the citizen or of any local usage which may not be controlled by the government of the United States by Congress declaring that the purpose is to regulate interstate commerce through the instrumentality of the Commerce clause. But there still must be some limit to the power of Congress and beyond which the state is supreme. The very nature of our form of government consisting of state and United States government, clearly denotes this. It is therefore, clear to the court, that the power of this court can not be enlarged by an Act of Congress.

But Congress has by this Act imposed what it declares to be an important duty upon employers and it has granted to employees a certain definite right. This deals with the citizen. May not this court enforce that duty and protect that right, not because it has obtained the power from Congress, but because it has the power and the duty under the law which creates it?

For the sake of brevity the court merely refers to §§11215, 11237, 11241, 11244, 11257, 11304 and 11305 GC. It will be found that there is a contradiction between §11257 GC, which provides for one person under certain conditions to sue or defend for other persons, and some of the other sections of the code.

Sec. 11215 provides that the Common Pleas Court shall have original jurisdiction in all civil cases where the sum or matter in dispute exceeds the exclusive original jurisdiction of justices of the peace, and the subsequent sections while they do not specifically provide for the procedure required in those cases are more elastic than is generally supposed, and they clearly do not prohibit such procedure.

Confusion in the construction and application of these sections the court feels may be traced through the cases of Platt v Colvin, 50 Oh St 285; Trustees v Thoman, 51 Oh St 285; Blair v Newbegin, 65 Oh St 425; Jungo v German, etc., 22 C. C. (N.S.) 311; Wainrich v Building Company, 26 Abs 545, and Alcorn v Burrett, 22 Abs 369.

The Code of Civil Procedure was adopted in 1853, and Section 2 thereof provides, "Its provisions and all proceedings under it shall be liberally construed with a view to promote its object and assist the parties obtaining justice."

And finally, Sec. 138 provides: "The court, in every stage of an action, must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party." The code, therefore, must be construed in this liberal view.

The sections of the General Code above noted had their origin in the Code of 1853. But they have been amended from time to time, and every amendment from 1853 to the present time, including the Declaratory Judgment Act, has been to make procedure more and more elastic and liberal in determination of the rights of litigants.

But it is in the broadening view of the courts in the interpretation of the Code that this court finds the basis for maintaining plaintiff's right to maintain this action.

A fair illustration of this broadened concept of procedure is found in the case of **Warner v The State, 104 Oh St 3?**. That case was decided on the 10th of November, 1922, and·it referred to the case of **Parker v State, 18 Oh St 88,** decided in 1868. It is clear that the Parker case, if followed, would result in a decision different than that adopted by the Supreme Court. Recognizing that fact, the court said, "We do not think, however, that that case is consonant with the modern doctrine of disregarding those technical rules and irregularities which do not materially affect the substantial rights of the defendant." And finally the court said, "Whether this court would have so decided the case of Parker v State if the court had been limited to only those reasons affecting materially his substantial rights, we can not say at this time, but we have the right to say that this court would not at this time so decide."

It is true that the Warner case is a criminal case, but nevertheless, it is clear that it illustrates the practice in civil cases.

It is suggested that the defendant has the right to know by whom he is being sued, and what claim will be made at the trial, so that he can prepare his defense. The court recognizes the force of these arguments. But industry had 120 days to prepare for its taking effect, and it is required to keep accurate and detailed records of its employees. When industry is challenged, as it is in these cases, it can prepare its answer from its records without difficulty, and as the burden of proof is on the side of the plaintiff in every particular, and as the employer is clothed with the presumption that he has obeyed the law, this argument leaves out of consideration the power of the trial court to protect the defendant from any unfair advantage which may seem to run to the plaintiff.

It is not conceivable that if upon a trial fairly conducted, judgment be rendered in favor of any number of employees, which judgment is fully sustained by the evidence, that a reviewing court would set aside this substantial right of an employee for the sake of protecting procedural methods. True, a defendant ought not to be put to the hazard of a false judgment merely because a righteous one would not be set aside. Nevertheless, this illustrates the liberality which ought to obtain in the procedure.

This Act was intended to and does link together all employees who are not paid according to its provisions and as to them creates a question of common interest. Each is given the right to have his claim presented in the action of a fellow employe. This court in sustaining that right is carrying out the purpose of the code, to-wit, to "assist the parties in obtaining justice."

Let it be remembered that the courts are not responsible for the existence of this Act of Congress, and that the judge is not permitted to construe or apply it with reference to his individual view of social or economic problems. The President said in his message to. Congress, made in the performance of his constitutional duty, that the Act is necessary to correct "deep-seated national ills," that the Congress declared that it is adopted to cure the evils which the Congress finds exists, and that the Supreme Court in the Darby Lumber case referred to "the recognized need of adopting" it.

In the light of these determinations courts ought not to risk losing the force of this Act in a maze of procedural controversies.

There are a number of incidental questions involved in these cases which require consideration. Section 3 (b) provides, "Commerce means trade, commerce, transportation, transmission, or communication among the several states or from any state to any place outside thereof."

Section 3 (a) provides, – "Person" means an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons.

Section 3 (d) provides, "Employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee.

Section 3 (h) provides, "Industry" means a trade, business, industry, or branch thereof, or group of industries, in which individuals are gainfully employed.

Section 3 (j) provides, "Produced" means produced, manufactured, mined, handled, or in any other manner worked on in any state.

In the Darby lumber case the Supreme Court said: "The 'production for commerce' intended includes at least production of goods, which, at the time of production, the employer, according to the normal course of his business, intends or expects to move in interstate commerce although through the exigencies of the business, all of the goods may not thereafter actually enter interstate commerce."

Measured by these definitions the questions involved are not difficult of answer.

Contention is raised in one case that the plaintiff appears not to have been in the employ of the defendant at the time of the filing of the petition, and for that reason it is contended that employees then engaged by the employer could not be similarly situated. Section 3 (e) provides: "Employee" includes any individual employed by an employer. In the case of Independent Transportation Company v Canton Insurance Company, 173 Federal, 564, it is said that the word "employed" is a verb of past and present tense. But, independent of this, it is obvious that one who had worked and not been paid, according to the Act, could bring the action the same as if he were still employed.

Argument is made that the term "similarly situated" refers to employees of the same class or in the same department as the plaintiff. The court is of the opinion, as above indicated, that taking the purpose of the Act into consideration it means all employees who have not been paid according to the provisions of the Act.

Therefore, all of the motions which are comprehended in this opinion will be overruled, but some incidental motions will be granted in certain cases.